**R & D BUSINESS SYSTEMS, et al., Plaintiffs,**

**v.**

**XEROX CORPORATION, Defendant.**

**D & R PRODUCTS, INC., Movant,**

**v.**

**XEROX CORPORATION, Respondent.**

**INYFX, INC., Movant,**

**v.**

**XEROX CORPORATION, Respondent.**

**Civ. A. Nos. 93–Z–1691, 93–Z–1763.**

United States District Court, D. Colorado.

Dec. 7, 1993.

---

Timothy J. Dow, Sommermeyer, Wick, Dow & Campbell, Fort Collins, CO, for movant D & R Products.

Jeffrey M. Graham, Maggio, Doyon & Reimer, Colorado Springs, CO, for movant INYFX, Inc.

Peter K. Bleakley, Cathy Hoffman, Arnold & Porter, Washington, DC, Lewis A. Steverson, Arnold & Porter, Denver, CO, for respondent Xerox Corp.

## MEMORANDUM OPINION AND ORDER

WEINSHIENK, District Judge.

This matter was before the Court on September 1, 1993, on movant D & R Products, Inc.'s (D & R) Verified Motion For Protective Order And Motion To Quash Subpoena (D & R Motion), and movant INYFX Inc.'s (INYFX) Verified Motion For Protective Order And Motion To Quash Subpoena (INYFX Motion). The Court heard the oral arguments of counsel, offers of proof, and testimony from a witness, and reviewed the submitted affidavits.

■ These cases are special matters arising out of a federal antitrust class action suit in Texas, *R & D Business Systems v. Xerox Corporation*, Civil Action No. 2–92–CV–042 (E.D.Tex.). The plaintiffs in *R & D Business* claim: (1) that Xerox Corporation (Xerox) has monopolized markets for high volume copier and printer equipment, parts, and service; (2) that alternative sources of parts are limited, inadequate, inefficient and costly; and (3) that Xerox can control prices and exclude competition because of its dominant control of the supply of parts and barriers to competitors' entry and expansion in certain markets.

Movants, competitors of Xerox, are not parties to the Texas action, but Xerox wants to depose them and other small competitors to refute the claims made by the plaintiffs in *R & D Business*. Xerox served movants with subpoenas duces tecum seeking a wide range of documents, including financial statements, customer lists, and sources for the high volume copier and printer parts movants sell to their customers. After objecting to the breadth of the discovery request, movants discussed their respective subpoenas with Xerox, and both agreed to limited production of documents. *See* D & R Motion, Exhibit B; INYFX Motion, Exhibit B.

When depositions of the movants' officers were noticed, movants informed Xerox that their objections to the scope of discovery applied to the depositions. Xerox's counsel responded that she did not feel bound by the agreements between counsel in connection with document production, and that during the depositions she intended to explore the areas previously objected to by movants. Movants then filed the motions now before the Court, requesting that the Court issue protective orders either quashing the subpoenas or limiting the scope of the depositions, and requesting an award of reasonable attorneys' fees and costs incurred.

■ Fed.R.Civ.P. 45(c)(3)(B) allows a subpoena requesting disclosure of a trade secret or confidential commercial information to be quashed unless the party serving the subpoena can show a substantial need for the requested discovery. In order to resist discovery, movants must establish that the information sought is a trade secret, and demonstrate that its disclosure might be harmful. *Centurion Industries, Inc. v. Warren Steurer*, 665 F.2d 323, 325 (10th Cir.1981). If

these requirements are met, the burden shifts to Xerox to establish that disclosure of the trade secrets is both relevant and necessary. This Court then must balance the need for the disclosure against the injury that would result from that disclosure. *Id.; see also American Standard, Inc. v. Pfizer Inc.,* 828 F.2d 734, 741 (Fed.Cir.1987). If proof of relevancy or need is not established, discovery should be denied. *Centurion Industries,* 665 F.2d at 325. The fact that a nonparty is involved makes no difference; the Rules make no distinction between parties and non-parties in respect to the type of information sought or the manner in which information is to be obtained.

 In Colorado, "trade secret" is defined as commercial information relating to business which is secret and of value, and which the owner has treated confidentially. *See* C.R.S.1986, §§ 7–74–102(4) and 18–4–408(2)(d). *See also Network Telecommunications v. Boor–Crepeau,* 790 P.2d 901 (Colo.App.1990); *Porter Industries, Inc. v. Higgins,* 680 P.2d 1339 (Colo.App.1984). Xerox is seeking movants' parts and supplies sources, research and development efforts, market strategy, and customer lists. This information took years to develop, and was acquired at great financial cost; D & R's president, Richard Jensen, testified that the list of parts suppliers was the most valuable asset the movants owned, and that great efforts were made to keep parts sources confidential. Based on this testimony, the affidavits submitted and the offers of proof, the Court finds that the requested information falls under the definition of trade secret as that term is defined by Colorado statutes and case law.

 Having shown the requested discovery to be trade secrets, movants must demonstrate that disclosure might be harmful. Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor. *See, e.g., Coca–Cola Bottling Co. v. Coca–Cola Co.,* 107 F.R.D. 288 (D.Del.1985). Xerox and many of the class plaintiffs in the underlying action are movants' competitors. The evidence submitted at the hearing on the motions to quash describes several types of harm movants would suffer, the most serious of which was testified to by Richard Jensen. Mr. Jensen stated that his suppliers, many of which did business with Xerox, did not want their identities revealed, because Xerox would pressure them to not deal with businesses like the movants. Since the suppliers would not want to risk losing their business with Xerox, supply sources would be cut off and movants' businesses would fail. Mr. Jensen's testimony, the affidavits submitted and the offers of proof convince the Court that disclosure of the requested information to Xerox would cause substantial harm to the movants.

Since the Court has determined that the requested information includes trade secrets, and that disclosure would be harmful to movants, the burden shifts to Xerox to show the relevancy of and need for the information. If Xerox fails the meet this burden, discovery should be denied. *Centurion Industries,* 665 F.2d at 325.

Xerox claims that it needs information concerning competing parts suppliers like the movants in order to defend against the claims made in the underlying case, by showing that Xerox has not monopolized markets for equipment, parts, and service, and that alternative sources of parts are not limited, inadequate, inefficient and costly. This argument makes the information relevant. However, Xerox must also show a substantial need for the information. Xerox has already agreed to limit document discovery. If the documents themselves are unnecessary to the defense, the testimony should also be unnecessary.

In addition, the evidence shows that a copy machine requires over 172,000 parts. Movants supply about 300 different parts to their customers; most of the remaining tens of thousands of parts are available only from Xerox. This means that even if all the requested discovery from the movants is produced, Xerox would be able to show an alternative supply for only a fraction of a percent of the parts necessary to operate a copy machine.

The Court finds that the potential harm described by movants far outweighs the need Xerox has shown for any other information.

Judge Edward A. Infante of the District Court for the Northern District of California has recently reached a similar conclusion. *See Order Denying Motion To Compel, R & D Business Systems v. Xerox,* No. C 93–7013 MISC (N.D.Cal. Aug. 20, 1993).

Xerox relies on a Protective Order issued on July 30, 1992, by Judge Sam Hall of the District Court for the Eastern District of Texas, which was made applicable to third parties by a Supplement To Protective Order filed October 16, 1992. Xerox's argument that the Protective Order requires that the information sought cannot be used to the detriment of movant is unconvincing. Even if the Protective Order adequately protected movants' interests, and the Court is not convinced that it does, Xerox must still meet the burden of showing the necessity for the information sought. *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1325 (Fed.Cir.1990). Xerox has failed to do so. Accordingly, it is

ORDERED that D & R Products, Inc.'s Verified Motion For Protective Order And Motion To Quash Subpoena is granted to the extent that questioning in the deposition shall be limited to, and shall be consistent with, the agreements reached among counsel on the limits to the production of documents. It is

FURTHER ORDERED that INYFX, Inc.'s Verified Motion For Protective Order And Motion To Quash Subpoena is granted to the extent that questioning in the deposition shall be limited to, and shall be consistent with, the agreements reached among counsel on the limits to the production of documents. It is

FURTHER ORDERED that movants are not required to disclose the identities of their suppliers, their financial records, product specifications or drawings, or any trade secret as that term is defined by Colorado law. It is

FURTHER ORDERED that movants' requests for costs and attorneys' fees incurred are denied.