**Warren JENNINGS, Gerald Cody, Michael Caddigan, and Mark Rodriguez, as Union Trustees of the Electrical Joint Apprenticeship and Training Trust, Plaintiffs,**

v.

**Frank PETERS, Frank Farrell, Steven Diamond, Elliott Metrick, and Mark Nemshick, as current and former Employer Trustees of the Electrical Joint Apprenticeship and Training Trust, Defendants.**

No. 94 C 3860.

United States District Court,
N.D. Illinois,
Eastern Division.

June 8, 1995.

Richard P. Carr, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, Michael Edward Lavelle, Marjorie Elizabeth McCollom, Lavelle, Juneau & McCollom, Ltd., Oak Park, IL, Jeffrey R. Fuller, Reinhart, Boerner, Vandeuren Norris & Rieselbach, S.C., Milwaukee, WI, for plaintiffs.

Richard J. Cochran, Edwin H. Conger, Timothy Kevin Travers, David Ryan Shannon, Tenney & Bentley, Chicago, IL, for defendants.

### MEMORANDUM OPINION

GRADY, District Judge.

Before the court is the plaintiffs' motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. For the reasons explained, the motion is granted.

The plaintiffs in this case are the four Union Trustees of the Electrical Joint Apprenticeship and Training Trust ("EJATT" or "Plan"). They have filed two lawsuits. The first suit, which is brought against several former EJATT employees, alleges that those employees breached their fiduciary duty to the Plan. *Jennings v. Pierce*, No. 93 C 2539 (N.D.Ill. filed April 27, 1993). This suit, their second, is brought against the current Employer Trustees of EJATT and seeks (1) a declaration that EJATT's Trust Agreement authorizes the reimbursement of their litigation expenses in the fiduciary duty suit; or, (2) in the alternative, appointment of an umpire to break the deadlock between the Union Trustees and the Employer Trustees on the issue of payment of legal fees and costs.

On April 17, 1995, counsel for the defendants took the deposition of Warren Jennings, one of the plaintiffs in this case. Jennings' deposition testimony was transcribed by a court reporter and was also videotaped. In addition to serving as a Union Trustee and Chairman of the Board of Trustees, Mr. Jennings also serves as the business manager and chief executive officer of Local 134 of the International Brotherhood of Electrical Workers. Mr. Jennings is currently campaigning for union office. The vote is scheduled for June 24, 1995.

The plaintiffs seek a protective order limiting Jennings' deposition testimony to use in this case and to disclosure only to named parties and counsel until the election is over. The plaintiffs fear that the deposition testimony may find its way into the election campaign and influence the vote. The plaintiffs suspect that Jennings' answers to deposition questions might, for instance, be reduced to a sound bite and broadcast at a campaign rally, or distributed to the electorate in some fashion. Such a use might cause Jennings irreparable harm in his campaign; his only recourse would be a costly and protracted election challenge.

Certain conduct of the defendants has given rise to the plaintiffs' worries. First, the defendants have consistently refused to agree to limit the use and disclosure of the deposition. These refusals have occurred in response to plaintiffs' counsel's requests, both before and after Jennings' deposition. Counsel for the defendants refused to agree to limit use and disclosure even in response to this court's pointed question in open court.[1] In addition, despite the fact that this

---

1. At the hearing of April 19, 1995, the following exchange occurred between the court and Edwin Conger, counsel for the defendants:

litigation centers around an alleged deadlock between the Union Trustees and the Employer Trustees regarding payment of attorneys fees in the underlying fiduciary duty lawsuit, defendants' counsel did not ask any questions about the deadlock, the services performed by the attorneys, the reasonableness of the attorneys fees, or the Trust Agreement's provisions regarding payment of fees.[2] Rather, the questioning at the deposition focused on Mr. Jennings' financial background, his employment history, his performance and service as an EJATT trustee, and the identities of his supporters and opponents in his 1992 campaign for business manager of Local 134. Moreover, the defendants did not even cite to Jennings' deposition in their May 10, 1995, memorandum opposing the plaintiffs' motion for summary judgment. From this conduct, the plaintiffs believe that the deposition was undertaken for purposes other than preparing for trial or settlement, and they are concerned that Jennings' deposition testimony might be used inappropriately to influence the election.

The defendants respond that Jennings' request is based on his own political motivations and that such motivations do not constitute "good cause" under Rule 26(c). Defendants also say that they must inform the Electrical Contractors Association and the Department of Labor that there is no merit to Jennings' allegations regarding the employer trustees' wrongdoing, and they need Jennings' deposition admissions to do so.

█ It is axiomatic that a party cannot take a deposition for purposes unrelated to the lawsuit at hand. As the Supreme Court has said, "Liberal discovery is provided for the *sole* purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 2208, 81 L.Ed.2d 17 (1984) (emphasis added). To ensure that the power of liberal discovery is not abused, Rule 26(c) of the Federal Rules of Civil Procedure provides:

> Upon motion by a party … for good cause shown, the court in which the action is pending … may make any order which justice requires to protect a party or person from annoyance, *embarrassment,* oppression, or undue burden or expense, including one or more of the following:
>
> \*   \*   \*   \*   \*   \*
>
> (6) that a deposition, after being sealed, be opened only by order of the court. …

Fed.R.Civ.P. 26(c) (emphasis added).

By what they have done and by what they have failed to do, the defendants have raised in the court's mind a healthy suspicion that they intend to use Mr. Jennings' deposition testimony for purposes other than preparing for trial or settling this suit. In the absence of a protective order, we would not be surprised to learn that Jennings' testimony had found its way into the union election campaign. It would not even take overt interference by the employers—we can envision, for instance, the publication of portions of Jennings' testimony in an employer newsletter, which could easily find its way into the hands of Jennings' opponent for union office.

Our concern is heightened by the fact that the defendants have failed to make the obvious response to the plaintiffs' motion: that they have no intention of either using Jennings' testimony or allowing it to be used in

---

THE COURT: Do your clients have any desire to disseminate this information to parties who would use it in the election?

MR. CONGER: Our desire, your Honor, is to make use of it first to advise the Department of Labor against which Mr. Jennings has filed a charge in December of 1992, and that has been pending ever since then, that claimed that the employer trustees were guilty of such misconduct that they ought to be removed from office.

We now find, I am informed—

THE COURT: The answer to my question, I think, is yes or no.

MR. CONGER: The answer is we do wish to make it known not only to the Department of Labor but also to the employer association that is paying for the defense of these trustees.

THE COURT: Does the employer association intend to use it to disseminate it among union members in connection with the election of union officers?

MR. CONGER: I don't have any idea. I am not here to make any representations about the officers of the employer association.

Transcript of April 19, 1995 at 10–11.

2. Although the transcript of Jennings' deposition was not provided to the court, the defendants do not dispute plaintiffs' version of the questions.

an inappropriate way. The only argument they offer to support their need to disseminate Jennings' testimony is one that we find wholly unpersuasive: that they have an interest in informing the Electrical Contractors Association and the Department of Labor that Jennings' allegations are without merit, and they need Jennings' deposition admissions to do so. Even if they have such an interest, they do not explain why it is imperative that they inform these third parties before June 24.

■ Defendants attack the plaintiffs' argument by saying that Jennings' aspirations for union office do not constitute good cause under Rule 26(c).[3] But the good cause for the protective order is primarily the showing plaintiffs have made that defendants may intend to use the Jennings' deposition for a purpose unrelated to settlement or trial preparation in this suit. Such use could cause Jennings embarrassment in the election campaign—which puts his request for a protective order squarely within Rule 26(c).

## CONCLUSION

The plaintiffs have made a specific, limited, and reasonable request that the defendants be prohibited from misusing materials obtained through the court's process. Plaintiffs' motion for a protective order is granted. The court's order of May 1, 1995, is continued in effect until June 25, 1995.[4]

**3.** As the plaintiffs point out, federal labor law frowns on employer interference with union elections. *See* 29 U.S.C. § 481(g) ("[N]o moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election...."); 29 C.F.R. § 452.78 ("This includes indirect as well as direct expenditures.... This prohibition against the use of employer money includes any costs incurred by an employer, or anything of value contributed by an employer, in order to support the candidacy of any individual in an election"). Preventing employer interference with a union election certainly constitutes good cause for a protective order.

**4.** On May 1, 1995, the court entered an order which states in part:
1. Defendants are hereby restrained and prohibited from using the deposition of Warren Jennings, taken on April 17, 1995, for any purpose other than in connection with the present action. This prohibition shall apply both to the videotaped deposition and to the transcribed deposition.
2. Disclosure of the deposition shall be limited to attorneys for the parties in this action, counsel for Edmund Pierce (a defendant in Civil Action No. 93 C 2539), and the named Union Trustees and Employer Trustees in this action.
3. Defendants shall not resume the deposition of Warren Jennings until further order of Court.
* * *
4. This order shall be binding upon the parties to this action; their officers, agents, employees and attorneys; and all persons in concert or participation with them who receive actual notice of this order.