**ECHOSTAR COMMUNICATIONS CORPORATION, a Nevada corporation, Plaintiff,**

v.

**THE NEWS CORPORATION LIMITED, an Australian corporation, Defendant.**

**THE NEWS CORPORATION LIMITED, a South Australian corporation, Counterclaimant,**

v.

**ECHOSTAR COMMUNICATIONS CORPORATION, a Nevada corporation and Charles W. Ergen, Counterclaim Defendants.**

**AMERICAN SKY BROADCASTING, LLC, a Delaware limited liability company, Intervenor–Counterclaimant,**

v.

**ECHOSTAR COMMUNICATIONS CORPORATION, a Nevada corporation and Charles W. Ergen, Counterclaim Defendants.**

No. 97–Z–960.

United States District Court, D. Colorado.

Jan. 13, 1998.

Donald E. Scott, Fred H. Bartlit, Jr., Ryan David Downs, Glen Eric Summers, Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, Philip S. Beck, Jeffrey A. Hall, Sidney N. Herman, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Dean S. Neuwirth, Dean S. Neuwirth, Attorney at Law, Denver, CO, for Plaintiff.

James E. Nesland, Richard Paul Salgado, Cooley, Godward, LLP, Denver, CO, for Intervenor.

## ORDER

SCHLATTER, United States Magistrate Judge.

Echostar has filed this action against The News Corporation Limited (News Corp), and alleges that News Corp breached a contract which Echostar asserts had been concluded between the two companies, the so-called "Echostar Contract." Echostar further alleges that News Corp breached the covenant of good faith and fair dealing which is contained within the contract. Echostar has alleged no other claims in the suit.

After the suit was filed, News Corp filed an Answer which contained affirmative defenses, and filed counterclaims against Echostar. It is not disputed between the parties

that Echostar and News Corp were in negotiations with each other for the purpose of concluding a contract, and it is not disputed that after the negotiations terminated, News Corp entered into a contract with Primestars Partners L.P. (Primestar).

This Order concerns discovery which Echostar seeks to obtain from companies which are not parties in this case. The discovery efforts were initiated by Echostar by the filing of subpoenas upon four entities: TCI Communications, Inc., TCI Satellite Entertainment, Inc. (collectively, TCI), GE Americom Communications, Inc. (GE Americom), and Cox Satellite, Inc. (Cox). When these companies refused to provide the discovery sought in the subpoenas, Echostar filed two motions to compel: (1) "Plaintiff's Motion to Compel Production in Response to Plaintiff's Subpoenas Dated June 30, 1997 Served Upon Non-parties TCI Communications, Inc. and TCI Satellite Entertainment, Inc.," and (2) "Plaintiff's Motion to Compel Production in Response to Plaintiff's Subpoenas Dated June 30, 1997 Served Upon Non-parties Cox Satellite, Inc. and GE American Communications, Inc." I will refer to them collectively as the non-parties.

The non-parties filed responses to Echostar's motions to compel, I received briefs from both Echostar and the non-parties, and I conducted a hearing at which the attorneys for Echostar and the non-parties offered comments and argument. For the reasons outlined below, I will deny Echostar's motions to compel except to the extent that TCI "has agreed, subject to the entry of a reasonable protective order, to produce to Echostar ... any documents that reflect communications with News Corp. concerning the Echostar Contract prior to News Corp.'s alleged repudiation of the contract." Opposition of TCI Satellite, p. 3 (henceforward cited as Opp. TCI). TCI is ordered to produce all documents in its possession which mention or relate to the Echostar Contract up to the date of the alleged repudiation of the contract by News Corp.

Echostar is seeking several broad categories of documents in its subpoenas, and a brief summary of those categories dramatizes the extreme breadth of Echostar's requests: (1) all documents which relate in any way to the Echostar Contract; (2) all documents which relate in any way to the Primestar transaction; (3) all documents which mention, or relate in any way to the "competition to cable television of the Direct Broadcast Satellite Industry"; (4) all documents which concern the carriage or distribution of programming owned by News Corp, and revenues which arise therefrom; and (5) all documents which mention or concern any encryption technology.

TCI argues that Echostar's motions to compel should be denied for a number of reasons: (a) Echostar has not, at this stage of the proceedings, exhausted its efforts to obtain these materials, first, from News Corp, (b) Echostar is seeking to obtain the discovery for purposes which are unrelated to the present litigation; (c) the documents seek trade secret information, or commercial information which is, at least, of a highly sensitive and confidential nature; (d) the materials sought are irrelevant to this lawsuit; (e) production of the materials would be overly burdensome for TCI, and; (f) Echostar failed to fulfill its obligations under D.C.COLO.LR 7.1A, our local rule, to confer with opposing counsel before filing its motions to compel. Cox and GE Americom join with TCI in asserting these arguments. Additionally, COX and GE Americom argue that the subpoenas should be quashed as to them because the subpoenas have issued from the wrong court. Generally, I agree with all of these arguments, and I discuss them in slightly different form below.

## A. OBLIGATION TO CONFER WITH OPPOSING COUNSEL.

■ Our local rules provide as follows:

The court will not consider any motion, other than a motion under Fed.R.Civ.P. 12 or 56, unless counsel for the moving party, before filing the motion, has conferred or made reasonable, good faith efforts to confer with opposing counsel to resolve the disputed matter. Counsel for the moving party shall file a certificate describing spe-

cifically the efforts to comply with this rule.

D.C.COLO.LR 7.1A.

Counsel for Echostar, Jeffrey Chase, states in the motion to compel as to TCI that he sent a copy of the motion to counsel for TCI, together with a letter "seeking concurrence in the motion." He states in the motion to compel as to Cox and GE Americom that he "conferred with counsel for Cox and GE in an attempt to resolve the issues raised by this motion." No details are provided as to the efforts in regard to Cox and GE Americom.

The correspondence which was sent to TCI by Mr. chase reflects that Mr. Chase provided opposing counsel somewhat less than four hours within which to digest and respond to the motion before Echostar would make good on its threat to file the motion almost immediately. Counsel for TCI, Jeffrey LeVee, in his reply to Mr. Chase, complains about the short period of time allowed for TCI to confer, and points out that "neither of you has made any attempt to contact me or Charlotte Wiessner other than to send us a draft of your motion to compel."

One of the purposes to be served by Local Rule 7.1A is to foster communication between opposing counsel, and to encourage an atmosphere of civility and professionalism. Counsel for Echostar hardly fulfilled the requirements and purposes of Local Rule 7.1A when he submitted a motion to opposing counsel with a four-hour deadline. The failure to comply with Local Rule 7.1A is sufficient alone to warrant a denial of the motion to compel.

## B. ECHOSTAR'S BURDEN OF PROOF.

■ Generally, discovery is regulated by Fed.R.Civ.P. 26(b). Under that rule, parties are entitled to obtain discovery materials on any matter "which is relevant to the subject matter involved in the pending action." Relevancy under Rule 26 is extremely broad. *In re Surety Association of America*, 388 F.2d 412, 414 (2nd Cir.1967). To be relevant, the information sought need not itself be admissible in court. A party meets its burden to demonstrate relevancy under Rule 26 if the party can show that the information which is sought is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

■ Under the circumstances presented by this case, Echostar must meet a burden of proof heavier than the ordinary burden imposed under Rule 26. First, the motions to compel filed by Echostar relate to non-parties. The fact that discovery is sought from a non-party is one factor which the Court may weigh in determining whether Echostar is entitled to an order which requires the production of the materials or information. *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed.Cir.1993). Courts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party is a factor which weighs against disclosure. *American Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 738 (Fed.Cir. 1987).

■ Second, the non-parties claim that Echostar's motions to compel seek the disclosure of trade secrets, or very sensitive or highly confidential commercial information. "In order to resist discovery, movants must establish that the information sought is a trade secret, and demonstrate that its disclosure might be harmful." *R & D Business Systems v. Xerox Corporation*, 152 F.R.D. 195, 196 (D.Colo.1993); *Centurion Industries, Inc. v. Warren Steurer*, 665 F.2d 323, 325 (10th Cir.1981). Once Cox and Americom have presented evidence which establishes that the information sought is trade secret information, or otherwise confidential, the burden shifts to Echostar. It must establish "that disclosure of the trade secrets is both relevant and necessary." *R & D Business Systems*, 152 F.R.D. at 197. Echostar must prove that it has a "substantial need" for the discovery which "cannot be otherwise met without undue hardship...." Fed. R.Civ.P. 45(c)(3)(B)(iii). I must then "balance the need for the disclosure against the injury that would result from that disclosure." *R & D Business Systems*, 152 F.R.D. at 197.

■ Executive officers for both TCI and Cox provided affidavits in which they explain that Echostar's subpoenas seek "highly confidential and proprietary information," and that the "disclosure or misuse of these trade secrets could substantially impair TSAT's and/or Primestar's businesses." Opp. TCI, Ex. C, p. 2. The affidavit for TCI notes that, among other things, the documents sought by Echostar contain "revenue projections, price forecasts, pricing options, evaluations of proposed capital structures and analyses," and "[d]isclosure of this information to Echostar would give Echostar an enormous competitive advantage." *Id.* at 3. The TCI affidavit notes that some documents would enable Echostar to "learn of our plans and strategies to compete **against Echostar.**" *Id.* at 4 (emphasis in original). The affidavit concludes that the costs for the requested discovery "could easily run into the tens (or hundreds) of thousands of dollars," and disclosure would "cause severe injury to [TCI] and to Primestar." *Id.* at 4 & 5. The affidavit submitted by Cox contains similar representations.

Echostar does not appear to challenge the claims by the non-parties that the information which is sought is of a confidential nature, and Echostar filed no affidavit in opposition to those which were submitted by TCI and Cox. Echostar's subpoenas, on their face, appear to seek information which would ordinarily fall within the definition of "trade secret." *See, e.g.,* Colo.Rev.Stat. §§ 7–74–102(4) and 18–4–408(2)(4) (1986).

No one disputes that Echostar is a competitor of the non-parties. "Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *R & D Business Systems,* 152 F.R.D. at 197 (emphasis added). I find it unnecessary to utilize any presumption, however, because I find that the non-parties have met their burden to demonstrate that disclosure of the requested information to Echostar is likely to cause "substantial harm."

Echostar, on the other hand, has failed to meet its burden. First, Echostar has not demonstrated a need for the information. More importantly, it certainly has not demonstrated a "substantial need." Echostar

has barely commenced discovery with regard to News Corp. The discovery which is of greatest relevance to this lawsuit is that which relates to the Echostar Contract and the Primestar transaction. Materials which relate to these transactions are as readily available from News Corp as they are from non-parties. Until Echostar has exhausted its efforts to seek production of these types of materials from News Corp, and until Echostar has, at least, completed some depositions, it cannot even begin to argue that it has a substantial need to obtain the materials from the non-parties. *Bada Company v. Montgomery Ward,* 32 F.R.D. 208, 209–210 (S.D.Cal.1963).

Second, beyond materials which directly relate to the Echostar/News Corp/Primestar transactions, Echostar has not satisfied me that the discovery it seeks is relevant. Echostar claims nothing more in this litigation than that News Corp breached a contract. Evidence which is sufficient to establish that any breach occurred, ordinarily, is possessed by the two litigants themselves. I am not persuaded, for example, that documents which relate to competition in the cable/satellite industry, or documents which relate to encryption technology, are relevant to the allegations of breach of contract which have been brought by Echostar. Echostar alleges that it needs this type of information in order to establish that News Corp had a motive for breaching the contract with Echostar. However, the potential harm which would occur from disclosure of this type of information far outweighs Echostar's stated needs for it.

## C. ECHOSTAR'S POSSIBLE ULTERIOR MOTIVES.

TCI points out that Echostar has publicly announced that it is contemplating a wide-ranging anti-trust lawsuit against the entities which have been subpoenaed by Echostar. Opp. TCI, p. 2. TCI submits a photocopy of an article from the "Satellite Business News" which states exactly that: "Echostar Weighs Possible Anti-trust Suit." Opp. TCI, Ex. E. TCI has also submitted a copy of the Comments which were written by Echostar to the Federal Communications Commission in opposition to the contract between Primestar

and News Corp. Opp. TCI, Ex. F. In its Comments, Echostar strongly objects to the contract between Primestar and News Corp. Its objection is expressed in terms which might be called "anti-trust buzzwords," such as "concentrated market," "viable competition," "promote competition in the market," or "substantial power in the market." I am not concerned with the accuracy or lack of accuracy of Echostar's prognostications. Rather, the reported intentions of Echostar (which, I realize, are not necessarily accurate) and Echostar's comments with regard to increasing concentration in the market, have raised in my mind "a healthy suspicion" that Echostar is seeking discovery from the subpoenaed non-parties for purposes which are unrelated to the present litigation. *See, Jennings v. Peters,* 162 F.R.D. 120, 122 (N.D.Ill.1995).

"It is axiomatic that a party cannot take [discovery] for purposes unrelated to the lawsuit at hand." *Id.* The trial judge has considerable discretion in the regulation of the discovery which is exchanged in a lawsuit, and the rules provide that I "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c). I view Echostar's discovery requests to the non-parties to be extremely broad, of very marginal relevance, if any, and obviously burdensome. In conjunction with my fears that Echostar is actually investigating the non-parties for possible anti-trust litigation, rather than merely preparing for trial in this lawsuit, I am of the opinion that Echostar's efforts at discovery from non-parties should be closely regulated.

## D. THE EXISTENCE OF A PROTECTIVE ORDER.

The existence of a protective order in this case, even a fairly restrictive order, does not persuade me to alter my conclusions. The protective order does not negate the fact that the information which is sought by Echostar is only marginally relevant, and does not negate the fact that Echostar has not established that denial of the discovery will cause Echostar to suffer undue hardship. *R & D Business Systems,* 152 F.R.D. at 198.

## E. INVALIDITY OF SUBPOENAS AS TO COX AND GE AMERICOM.

■ Both Cox and GE Americom argue that the subpoenas upon them are invalid because the subpoenas were not issued by the proper court. Rule 45 provides that a subpoena duces tecum "shall issue from the court for the district in which the production or inspection is to be made." Fed.R.Civ.P. 45(a)(2). The subpoenas to both Cox and GE Americom were issued out of this Court here in Colorado. The subpoena to Cox sought production of discovery in Georgia, and the subpoena to GE Americom sought production of discovery in New Jersey. Cox states that it "transacts no business and maintains no documents in Colorado." Cox Opp., p. 2. Both Cox and GE Americom argue that Echostar's subpoenas, to be valid, must be issued by the courts where production is to be made.

Echostar states that it has served its subpoenas upon registered agents for Cox and GE Americom here in Colorado. Echostar argues that because the Court has jurisdiction over these non-parties, the Court possesses the power to enforce the subpoenas, and order the parties to comply with them. However, simply because this Court has jurisdiction over the non-parties does not make this Court the most appropriate forum for either issuance or enforcement of subpoenas. *Ariel v. Jones,* 693 F.2d 1058, 1060 (11th Cir.1982),

The appropriate question to ask is the question posed by the Eleventh Circuit in *Ariel v. Jones:* whether the agent for service of process possesses "the degree of control" over the documents which would make it appropriate to enforce a subpoena over a corporation from a court in one state, when the corporation's documents are located in another state. *Id.* at 1060. The Court quoted from a district court opinion, and held:

"[E]ven positing that this court has personal jurisdiction ..., it is unreasonable to assume that these appellants' local offices 'control' all documents kept at their respective corporate headquarters.... In

the absence of such control, therefore, even the existence of personal jurisdiction in this court is insufficient to create jurisdiction over the documents which are outside of the district."

*Id.* at 1061.

Echostar notes that Rule 45 was amended in 1991. However, the amendments did not affect the discretion of the trial court to quash a subpoena if the court finds that the subpoena imposes an "undue burden" upon the subpoenaed party. Fed.R.Civ.P. 45(c)(3)(A)(iv). I have been presented with no evidence with regard to the degree of control over discovery materials which may be exercised by the registered agents for Cox and GE Americom here in Colorado. I assume, however, that the persons with the most significant control are located in the states where the documents are located. In these circumstances, I find that it is burdensome to expect Cox and GE Americom to either litigate the validity of the subpoena here in Colorado, or to produce the documents here in Colorado.

The Rule requires that subpoenas "shall" issue from the court for the district in which the production or inspection is to be made. Fed.R.Civ.P. 45(a)(2). Echostar did not comply with the mandates of this rule, and failed to obtain the issuance of subpoenas from the states where production of materials were to be obtained from Cox and GE Americom. I find that the subpoenas which were issued upon Cox and GE Americom are invalid.

Therefore it is ORDERED that:

1. Echostar's "Motion to Compel Production in Response to Plaintiff's Subpoenas," filed July 30, 1997, as to non-parties TCI Communications, Inc., and TCI Satellite Entertainment, Inc., is GRANTED IN PART, and TCI is directed to produce to Echostar any documents that reflect communications with News Corp concerning the Echostar Contract up to the date of the alleged repudiation of the contract by News Corp. The motion is DENIED in all other respects.

2. Echostar's "Motion to Compel Production in Response to Plaintiff's Subpoenas," filed July 30, 1997, as to non-parties Cox

Satellite, Inc. and GE American Communications, Inc., is DENIED.