THE GOODYEAR TIRE & RUBBER COMPANY, Plaintiff,

v.

KIRK'S TIRE & AUTO SERVICENTER OF HAVERSTRAW, INC., Defendant.

No. 02–MC–211–JWL.

United States District Court, D. Kansas.

Jan. 23, 2003.

Kevin D. Case, The Case Law Firm, Kansas City, MO, for movant.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Pending before the Court is the Motion to Quash (doc. 1) filed by non-party Universal Underwriters Insurance Company ("Universal"). This matter arises from issuance of a subpoena from this District to Universal, Defendant's liability insurer. Plaintiff Goodyear Tire & Rubber Company ("Goodyear") commenced the underlying action in the United States District Court for the Southern District of New York seeking recovery of damages it incurred as a result of fire damage to a building it subleased to defendant Kirk's Tire & Auto Center, Inc. ("Kirk's"). For the reasons set forth below, Universal's Motion to Quash (doc. 1) is granted in part and denied in part.

### I. Relevant Factual Background

On or about March 28, 1995, Goodyear leased 11 Route 9W, West Haverstraw, New York ("premises") from Alan Frost and the Estate of Seymour Frost ("lessors"). One of the terms of the lease required Goodyear to carry fire and extended insurance coverage for the full replacement value of the premises and furnish the lessors certificates of insurance. Pursuant to the lease terms, Goodyear obtained an insurance policy with a "nil" deductible and issued insurance certificates to its lessors. The insurance certificates identified Allianz Insurance Company ("Allianz") as the insurer and stated that there was a "nil" deductible.

On July 29, 1994, Goodyear subleased the premises to Kirk's. The sublease provided that all terms and conditions of Goodyear's basic lease with the lessors are binding upon Kirk's. Additionally, it provided that Kirk's would pay Goodyear for all costs and expenses incurred by Goodyear with respect to the basic lease, including, but not limited,

insurance costs. The sublease also provided that Kirk's would pay 1/12 of the estimated annual cost of fire and extended coverage insurance on the premises each month and that Kirk's monthly charge would vary to reflect the actual charge incurred by Goodyear for fire and extended coverage insurance.

On January 23, 1999, an employee of Kirk's was draining a vehicle's fuel tank when fuel ignited the shop area, resulting in the destruction of the leased premises. Goodyear submitted a claim through another global insurance policy with Allianz and another carrier named Excel. This policy had a $250,000 deductible.

Goodyear thereafter entered into a settlement agreement with the lessors. This agreement assigned the lessors' rights, claims and interest against any liable persons to Goodyear.

Goodyear commenced the underlying action in January 2002, alleging that Kirk's is liable for the damages to the premises under the indemnification clause in the sublease and for negligence. At the time of the fire, Kirk's was insured by Universal. After the fire, Kirk's filed first-party claims under its insurance policy with Universal. Goodyear also filed a third-party claim under Kirk's insurance policy with Universal. In the process of investigating the matter, Universal retained Compass Investigators & Adjustors ("Compass") to assist in the investigation and adjustment of Kirk's first-party property claim and Goodyear's third-party claim. Kirk's first-party claim included the adjustment for losses to its stock, equipment, improvements and betterments, and loss of income.

On August 15, 2002, Goodyear served a subpoena upon Universal, commanding Universal to appear for deposition regarding certain areas of inquiry and to produce certain documents. The subpoena provided for the depositions and production of documents to take place in Overland Park, Kansas. In response, Universal filed the instant motion to quash the subpoena on August 29, 2002. Universal's motion seeks to quash the subpoena on the grounds that the documents and information requested are protected by

the work product doctrine, are irrelevant to the action, and that complying with the subpoena subjects Universal to an undue burden.

## II. Discussion

Fed.R.Civ.P. 45 governs motions to quash subpoenas. Section (c)(3)(A) of the Rule provides:

On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause .(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.[1]

Under Rule 45(c)(3), motions to quash, modify, or condition the subpoena are made to the district court in the district from which the subpoena was issued. It is the issuing court that has the needed jurisdiction to enforce the subpoena, and therefore is the logical forum for altering its terms or rendering it nugatory.[2] However, it is within the discretion of the court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending.[3]

### A. Work Product Objection

Universal seeks to quash the subpoena pursuant to Rule 45(c)(3)(A)(iii), which requires a court to quash a subpoena that will result in "disclosure of privileged or other protected matter [where] no exception or waiver applies." Universal contends that compliance with the subpoena necessarily would require it to disclose documents protected from disclosure by the work product doctrine. In response, Goodyear contends that Universal's blanket assertions of work product are not sufficient to quash the subpoena and a number of the documents sought are clearly not covered by the work product doctrine.

Initially, the Court notes that Universal does not appear to have sufficiently fulfilled its duties in responding to Goodyear's subpoena. Rule 45(d) addresses the duties of a subpoenaed party in responding to a subpoena. It sets forth duties in two situations: (1) the subpoenaed party's duties in responding to a subpoena duces tecum requesting documents, and (2) the subpoenaed party's duties when attempting to resist disclosure based upon a claim of privilege.[4] Specifically, subsection (d)(2) of Rule 45 provides that "[w]hen information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim."[5] According to the Advisory Committee Notes, the purpose of the Rule is to provide a party whose discovery is constrained by a claim of privilege or work product protection with information sufficient to evaluate that claim and to resist it if that seems unjustified.[6] The person claiming a privilege or work product protection cannot decide the limits of that party's own entitlement.[7] As a result, the claim of privilege must be made "expressly," and must supply sufficient information for an evaluation of the

**1.** Fed.R.Civ.P. 45(c)(3)(A).

**2.** 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 (2d ed.1995).

**3.** *See Petersen v. Douglas County Bank & Trust Co.,* 940 F.2d 1389 (10th Cir.1991).

**4.** *Id.* at § 2464.

**5.** Fed.R.Civ.P. 45(d)(2).

**6.** Fed.R.Civ.P. 45(d)(2) advisory committee's note.

**7.** *Id.*

claim.[8] A party receiving a discovery request who asserts a privilege or protection but fails to disclose that claim is at risk of waiving the privilege or protection.[9]

One problem presented by Rule 45(d)(2) is that it fails to provide any guidance as to when the claim of privilege or work product must be asserted by the non-party subpoenaed. This Court has previously permitted a subpoenaed non-party to provide the information requested by Rule 45(d)(2) after filing a motion to quash the subpoena.[10] In *Phalp v. City of Overland Park, Kansas*,[11] this Court granted a non-party attorney's motion to quash but directed him to provide the party issuing the subpoena with "a detailed description of the materials in dispute and . . . specific and precise reasons for [its] claim of protection from disclosure." Similarly, in *Stewart v. Mitchell Transport*,[12] the Court granted the motion to quash as to the alleged privileged/protected documents but directed defendant to provide plaintiffs with a privilege log.

In *Phalp*,[13] this Court summarized the rules regarding subpoenas and privilege as follows:

> Parties objecting to [a subpoena] on the basis of . . . privilege bear the burden of establishing that it applies. To carry the burden, they must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery. A blanket claim as to the applicability of a privilege does not satisfy the burden of proof.[14]

Universal has failed to satisfy these requirements with respect to its work product objections. The Court therefore does not possess sufficient information to enable it to determine whether each element of required for work product protection has been satisfied. Given Universal's failure to provide the required information, the Court could deny the motion to quash to the extent it is based on Universal's blanket assertion of work product protection. The Court, however, will decline to do so at this time. Instead, the Court will grant the motion to quash as to the alleged protected documents, and Universal shall not be required to produce, at least at this time, the requested documents that it contends are protected by work product doctrine. Notwithstanding the above, however, the Court will direct Universal to provide to Goodyear a privilege log containing "a detailed description of the materials in dispute and specific and precise reasons for its claim of protection from disclosure."[15] The log should, at a minimum, include the following for each document that Universal contends is protected by the work product doctrine:

1. A description of the document (i.e., correspondence, memorandum, etc.);

2. Date prepared or date notations made;

3. Date of document (if different from # 2);

4. Who prepared the document or made notations on the document;

5. For whom the document was prepared and to whom it was directed;

6. Purpose of preparing the document or making the notations;

7. Number of pages of each document; and

**8.** *Id.*

**9.** *Id.*

**10.** *Phalp v. City of Overland Park, Kansas*, No. 00–2354–JAR, 2002 WL 1162449, at *2 (D.Kan. May 8, 2002); *Stewart v. Mitchell Transport*, No. 01–2546–JWL, 2002 WL 1558210, at *9 (D.Kan. July 8, 2002); *see also Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 629 (N.D.Ill.1999) (citing *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir.1996) and *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2nd Cir.1998)) ("Courts interpreting Rule 45(d)(2) have held that a party claiming a privilege may provide a privilege log within a 'reasonable time' as long as objections are asserted within the fourteen-day time frame.")

**11.** 2002 WL 1162449, at *2.

**12.** 2002 WL 1558210, at *9.

**13.** 2002 WL 1162449, at *2.

**14.** *Phalp*, 2002 WL 1162449, at *2 (citations and internal quotations omitted).

**15.** *See id.* (citation omitted) (requiring party moving to quash on privilege grounds to provide privilege log); *Stewart*, 2002 WL 1558210, at *9 (same).

8. Basis for withholding discovery.[16]

Universal shall provide this privilege log to Goodyear **within twenty (20) days from the date of filing of this Memorandum and Order**. Goodyear may then request production of any document for which the claim of work product protection appears inadequate or waived, and, if Universal objects as provided for under Rule 45(c)(2)(B), Goodyear may file a motion to compel pursuant to that same rule.

## B. Undue Burden Objection

Universal next objects on the grounds that the subpoena subjects it to an undue burden because compliance with the subpoena would require it produce a minimum of five representatives for deposition, several of which are not located within 100 miles of this Court and would have to be flown in to be deposed at the Overland Park, Kansas location identified in the subpoena. In its response, Goodyear indicates that it is willing to make reasonable accommodations to avoid any genuine burden imposed upon Universal by the subpoena by attempting to avoid the necessity for multiple witnesses to the extent possible, and by working with Universal to reach an accommodation as to location of the depositions. Goodyear also states that it is willing to work with Universal so that Universal's designated representatives do not have to travel to Kansas for deposition. It states it is also willing to limit the scope of the subpoena's areas of inquiry and investigate the possibility of conducting the depositions telephonically.

Fed.R.Civ.P. 45(c)(1) requires that the attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Rule 45(c)(3)(A)(ii) requires the court by which a subpoena was issued to quash or modify the subpoena if it "requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person."

Pursuant to Rule 45(c)(3)(A)(ii), the Court hereby quashes any portions of the subpoena that would require the appropriate Universal representatives to travel more than 100 miles from the place they reside, are employed or regularly transact business in person. For all remaining depositions, Goodyear and Universal shall confer in an attempt to set mutually convenient dates, locations, and method for any remaining depositions, and minimize the cost and disruption to non-party Universal.

## C. Irrelevance Objection

Universal also objects to the subpoena on the basis that it seeks information irrelevant to the claim or defense of any party in the underlying action.

Irrelevance is not contained within the list of enumerated reasons for quashing a subpoena found in Rule 45. It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34.[17] Thus, the court must examine whether a request contained in a subpoena is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26(b) and as applied to Rule 34 requests for production.[18]

Whether a subpoena imposes an undue burden upon a witness is a case specific inquiry that turns on "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[19] Courts are re-

**16.** *See id* (setting forth minimum requirements for privilege log).

**17.** *See* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). *See also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2459 at p. 42 (2d ed.1995) (scope of discovery through

a subpoena is "exceedingly broad" and incorporates the provisions of Rules 26(b) and 34).

**18.** *Phalp,* 2002 WL 1162449, at *3–4 (applying general principles of overbreadth and irrelevance to subpoena duces tecum).

**19.** *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 53 (S.D.N.Y.1996) (quoting *United States v. Int'l Bus. Mach. Corp.,* 83 F.R.D. 97, 104 (S.D.N.Y.1979)).

quired to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure.[20] Demonstrating relevance is the burden of the party seeking discovery.[21]

The Tenth Circuit appears to recognize the balancing test for quashing a subpoena based upon undue burden.[22] Although relevance of the subpoenaed documents was not an issue, the Tenth Circuit referenced the "appropriate balancing test" concerning the information sought vis-a-vis the burden imposed upon the responding party.[23]

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." [24]

 Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[25] A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[26] When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26(b)(1), or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure.[27] Conversely, when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request.[28]

### 1. First-party claim information

 Universal claims that the subpoena should be quashed because it requests documents and deposition testimony that are not relevant to the claim or defense of any party; in particular, the portions of the subpoena relating to Kirk's first-party property claim for its tools, equipment, and lost income. Universal argues that discovery into adjustment of Kirk's first-party property claim is not relevant, and therefore, requests that the Court quash those portions of the subpoena seeking documents and/or testimony directed toward Kirk's first-party property claim on its policy with Universal.

Goodyear argues that it seeks the information related to the payment made by Universal to Kirk's or KMC for its "stock, equipment, improvement and betterments, and loss of income" because this information relates to the reasons Kirk's purchased the insurance policy from Universal that covered the premises at the time of the fire. Goodyear argues that all these documents and testimony are relevant to this litigation because they may contain admissions as to Kirk's negligence in starting the fire and would show the amounts of payments, and policy provision, under which the payments were made by Universal to Kirk's under Kirk's liability policy.

**20.** *Katz v. Batavia Marine & Sporting Supplies,* 984 F.2d 422, 424 (Fed.Cir.1993); *Echostar Communications Corp. v. The News Corporation Ltd.,* 180 F.R.D. 391, 394 (D.Colo.1998); Fed. R.Civ.P. 45(c)(2)(B).

**21.** *Katz,* 984 F.2d at 424–25; *Echostar Communications Corp. v. The News Corp. Ltd.,* 180 F.R.D. 391, 394 (D.Colo.1998); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.,* 163 F.R.D. 329, 335 (N.D.Cal.1995).

**22.** *In re Coordinated Pretrial Proceedings in Petroleum,* 669 F.2d 620, 623 (10th Cir.1982).

**23.** *Id.*

**24.** Fed. R.Civ. P. 26(b)(1).

**25.** *Sheldon v. Vermonty,* 204 F.R.D. 679, 689–90 (D.Kan.2001) (citations omitted).

**26.** *Id.* (citations omitted).

**27.** *Scott v. Leavenworth Unified School Dist. No. 453,* 190 F.R.D. 583, 585 (D.Kan.1999).

**28.** *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 442, 445 (D.Kan.2000).

The Court determines that Universal has not shown that Goodyear's discovery requests seeking information relating to Kirk's first-party property claim have no possible bearing on the claim or defense of any party. Both the third-party and first-party claims against Kirk's insurance policy with Universal appear relevant enough to permit discovery into these matters. Accordingly, the Court denies Universal's Motion to Quash those portions of the subpoena seeking documents and/or testimony directed toward Kirk's first-party property claim on its policy with Universal.

### 2. Areas of Inquiry

■ Universal also asserts a relevancy objection to the information sought in Schedule A and Schedule B to Goodyear's subpoena. Schedule A of Goodyear's subpoena to Universal outlines ten "Areas of inquiry:" (1) the Universal employee who sold the insurance polices to Kirk's or Kirk's Management Company ("KMC") for the period February 1, 1998 through February 1, 1999; (2) the Universal employee who sold the insurance polices to Kirk's or KMC for the period February 1, 1993 through February 1, 1998; (3) the Universal employee who sold the insurance polices to Kirk's or KMC for the period February 1, 1999 through the present date; (4) any and all communications between Kirk's or KMC and Universal with regard to the premises; (5) any and all communications between Compass and Universal with regard to the premises; (6) the fire at the premises; (7) Universal's guidelines or policies regarding the draining of fuel tanks inside a building; (8) Universal's assessment of the damage to the premises as a result of the fire; (9) Universal's payments made to Kirk's or KMC as a result of the fire; and (10) the relationship between or among Kirk's, KMC, Compass, and Universal with regard to the premises.

Notwithstanding any claim of work product protection, the Court finds that all ten enumerated "Areas of Inquiry" contained in Schedule A to the subpoena, except those numbered 2 and 3 seeking the identity of Universal employees who sold insurance policies to Kirk's or KMC for the time periods February 1, 1993 through February 1, 1998

and February 1, 1999 through the present date, appear relevant on their face. Because most of the discovery sought appears relevant on its face, Universal has the burden to establish the lack of relevance of Areas of Inquiry numbered 1 and 4 through 10. Universal has not met this burden. The Court, therefore, sustains Universal's objection to "Areas of Inquiry" numbered 2 and 3 of Schedule A.

### 3. Document requests

In Schedule B to the subpoena directed at Universal, Goodyear seeks documents in twelve categories: (1) documents related to the relationship among Kirk's, KMC, Universal, and Compass with regard to the premises; (2) documents related to communications between Kirk's or KMC and Universal regarding the premises; (3) documents related to communications between Universal and Compass regarding the premises; (4) documents or materials supplied to, reviewed by, or relied upon by Universal regarding the assessment of damages to the premises; (5) documents related to the fire at the premises; (6) documents related to Universal's guidelines or policies regarding the draining of fuel tanks inside a building; (7) documents related to Universal's payment(s) made to Kirk's or KMC as a result of the fire; (8) documents related to the purchase of insurance on the premises for the period February 1, 1998 through February 1, 1999; (9) documents related to the purchase of insurance on the premises for the period February 1, 1993 through February 1, 1998; (10) documents related to the purchase of insurance on the premises for the period February 1, 1999 through the present; (11) documents provided by Kirk's or KMC to Compass or Universal respecting the fire at the premises; and (12) documents related to Kirk's claims or defenses in the action.

Goodyear contends that each of its twelve enumerated categories of documents is relevant to the action, but states that, in the spirit of cooperation, it is willing to limit its subpoenaed documents to categories one through eight and eleven on Schedule B.

The Court finds the categories requesting documents related to the purchase of insurance on the premises for the time period February 1, 1993 through February 1, 1998 (No. 9) and February 1, 1999 through the present (No. 10) do not appear relevant on their face. As Goodyear has not sufficiently shown the relevance of the documents requested by these categories, and has stated that it is willing to exclude these categories, the Court, therefore, sustains Universal's relevancy objection to document request categories numbered 9, 10, and 12 of Schedule B.

## III. Conclusion

In summary, Universal's Motion to Quash (doc. 1) is granted in part and denied in part. The Court grants Universal's Motion to Quash subpoena as to the requested documents Universal claims are protected by the work product doctrine, and Universal shall not be required to produce, at least at this time, those requested documents that it claims are protected. Notwithstanding the above, however, Universal shall provide to Goodyear **within twenty (20) days from the date of filing of this Memorandum and Order** a privilege log containing "a detailed description of the materials in dispute and specific and precise reasons for its claim of protection from disclosure." [29] Goodyear may then request production of any document for which the claim of work product protection appears inadequate or waived, and, if Universal objects as provided for under Rule 45(c)(2)(B), Goodyear may file a motion to compel pursuant to that same rule.

The Court further grants Universal's Motion to Quash on the portions of the subpoena requiring the appropriate Universal representatives to travel more than 100 miles from the place they reside, are employed or regularly transact business in person. For all remaining depositions not quashed by this Memorandum and Order, Goodyear and Universal shall confer in an attempt to set mutually convenient dates, locations, and method so as to minimize the cost and disruption to non-party Universal.

The Court further grants Universal's Motion to Quash as to the following specific discovery requests: (1) Schedule A "Areas of Inquiry" numbered 2 and 3, and (2) Schedule B "Documents to be Produced" categories numbered 9, 10 and 12.

The Court denies the remainder of Universal's Motion to Quash (doc. 1).

IT IS SO ORDERED.

---

**29.** *See id.* (citation omitted) (requiring party moving to quash on privilege grounds to provide privilege log); *Stewart,* 2002 WL 1558210, at *9 (same).