CMEDIA, LLC, an Oregon limited
liability company, Plaintiff,

v.

LIFEKEY HEALTHCARE, LLC, an Ohio
limited liability company, Defendant.

No. 3:03–MC–025–G.

United States District Court,
N.D. Texas,
Dallas Division.

April 17, 2003.

**388**

Richard T. Archibald, T. Ray Guy, Weil, Gotshal & Manges, Dallas, TX, John F. Mcgrory, Jr., Portland, OR, for plaintiff.

Craig A. Bernstein, Law Office of Craig A. Bernstein, Dallas, TX, for movant.

## MEMORANDUM OPINION AND ORDER

RAMIREZ, United States Magistrate Judge.

Pursuant to the District Court's Order of Reference, filed February 14, 2003, this matter was referred to the U.S. Magistrate Judge for hearing, if necessary, and determination. Before the Court are *Non–Party Koeppel Direct, Inc.'s Objections to Plaintiff's Requests for Documents and Things from Koeppel Direct, Inc. and Motion for Protective Order*, filed February 13, 2003, and *Response of Cmedia, LLC to Koeppel Direct, Inc.'s Motion for Protective Order*, filed March 25, 2003. A hearing was held on the record on March 31, 2003. Having reviewed the evidence of the parties, the undersigned determines that Koeppel Direct, Inc.'s motion should be GRANTED.

## I. Background

Plaintiff Cmedia, LLC ("Cmedia") is a company whose business is to negotiate, purchase, and otherwise facilitate media placements for advertising on broadcast, satellite, and cable television stations and other media outlets. (Obj. at 2.) Cmedia entered into a contract with Defendant LifeKey Healthcare, LLC ("LifeKey") whereby Cmedia was to purchase advertising bookings for LifeKey. *Id.* at 3. Subsequently, the parties relationship ended, and Cmedia sued LifeKey for breach of contract. *Id.* LifeKey counterclaimed for breach of contract, alleging that Cmedia booked media placements at rates excessive to those customarily paid. *Id.* (Obj., Exhibit B–3 at 3–4.) The counterclaim was filed on September 11, 2002. *Id.*

On or about January 29, 2003, Cmedia caused a subpoena to be served on non-party Koeppel Direct, Inc. ("Koeppel"). (Obj., Exhibit B–1 at 1–5.) Koeppel is a direct competitor of Cmedia and replaced Cmedia as LifeKey's media agent. (Obj. at 3.) The subpoena, which contained "Requests for Documents and Things," sought production of the following:

1. Any evidence of communication between [Koeppel] and any Warshak–Controlled companies, including emails, correspondence, or notes of conversations.

2. All documents showing prices charged by television stations or networks for advertising placed by Koeppel Direct for any Warshak–Controlled Companies. This request includes, but is not limited to, station affidavits, documents showing the prices charged for spots and the number of spots cleared, and all proposals made to stations.

3. Any and all documents constituting agreements between Koeppel Direct and any Warshak–Controlled Companies, as well as all draft or proposed agreements.

(Obj., Exhibit B–1 at 4–5.) "Warshak–Controlled Companies" is defined as "any companies in which Steve Warshack is a officer, and include, but are not limited to, LifeKey Healthcare, Inc., International Health, Inc., TCI Media, Inc., Golden Industries, Inc., Fathead Graphics Ltd., Boland International, and Warner Healthcare." *Id.* at 4. However, at the hearing, Cmedia stated that it would limit its request to documents pertaining to the three defendants in the underlying suit, LifeKey, Boland International, and Warner Healthcare. Accordingly, in considering the Objections the Court consider the requests for production as requesting documents pertaining to the three named defendants, rather than to "all Warshak–Controlled Companies."

Koeppel has filed objections to the discovery requests and a motion for a protective

order. Because the discovery requests were served on Koeppel pursuant to a subpoena under FED. R. CIV. P. 45, the Court will treat Koeppel's motion as a motion to quash or modify under FED. R. CIV. P. 45(3). Koeppel makes numerous objections to the discovery requests: (1) the requests do not seek the production of documents that are relevant to the lawsuit; (2) they are not reasonably calculated to lead to the discovery of admissible evidence; (3) the definition of "Warshak–Controlled Companies" assumes that Steve Warshack is an officer of each of the named companies and any response would be misleading and likely to confuse; (4) the requests are vague and ambiguous; (5) the requests are overly broad; and (5) the requests seek production of privileged documents that contain Koeppel's trade secrets. Koeppel provides an affidavit of its president, Peter Koeppel, stating that information concerning terms of contracts and advertising rates provides a business advantage to competitors, that Koeppel has a practice of maintaining the confidentiality of that information, and that disclosure of that information to Cmedia, a competitor, would damages Koeppel's ability to compete. (Obj., Exhibit A at 1–2.)

Cmedia asserts that documents relating to the services now performed by Koeppel for LifeKey are relevant to Cmedia's defense of the counterclaim wherein LifeKey asserted that Cmedia's prices were too high. (Resp. at 1–2.)

## II. Analysis

A motion to quash or modify under FED. R. CIV. P. 45(c)(3) requires a court to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies" or subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iii), (iv). A facially overbroad subpoena is unduly burdensome. *Williams v. City of Dallas,* 178 F.R.D. 103, 109 (N.D.Tex.1998). If a subpoena "requires disclosure of a trade secret or other confidential research, development, or commercial information," and the party seeking discovery "shows a substantial need for the . . . material that cannot otherwise be met without undue

hardship . . ., the court may order . . . production only upon specified conditions." Fed. R.Civ.P. 45(c)(3)(B). The court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party. *Truswal Systems Corp. v. Hydro–Air Engineering, Inc.,* 813 F.2d 1207, 1210 (Fed.Cir.1987). One factor to be considered in assessing the burden of complying with a subpoena is whether the moving party is a non-party to the litigation. *Truswal Systems Corp.,* 813 F.2d at 1210. Modification of a subpoena is preferable to quashing it. *Tiberi v. CIGNA Ins. Co.,* 40 F.3d 110, 112 (5th Cir.1994).

### A. Overbreadth and Irrelevance

Koeppel asserts that the requests are overbroad, not relevant to Cmedia's defense against LifeKey's counterclaim, and are not reasonably calculated to lead to the discovery of admissible evidence. (Obj. at 4–5.) Cmedia claims that the relevance of the documents relating to the services performed by Koeppel for LifeKey cannot be disputed. (Resp. at 1–2.) Neither party provides a great deal of support for their contentions.

As stated above, a facially overbroad subpoena is unduly burdensome. *Williams,* 178 F.R.D. at 103. "When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of Rule 26(b)(1)." *Id.* at 110 (citing *Linder v. Dept. of Defense,* 133 F.3d 17, 24 (D.C.Cir.1998)). Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The issue raised by the counterclaim in the underlying suit is whether Cmedia breached its contract with LifeKey by purchasing media placements for LifeKey at excessive rates. To defend against that claim, Cmedia will need to provide some evidence of the rates customarily paid by direct response advertisers for similar advertising slots during the period in question. Because Koeppel

replaced Cmedia as LifeKey's media agent, Cmedia claims that the prices charged for advertising placed by Koeppel for LifeKey, Boland International, and Warner Healthcare are relevant to its defense. (Resp. at 1–2.) At the hearing, Cmedia stated that the best way for it to defend against the counterclaim was to compare prices obtained from all media outlets and time slots on behalf of LifeKey, Boland International, and Warner Healthcare by Cmedia's replacement, Koeppel. Koeppel, on the other hand, argued that the only relevant documents would pertain to the same time slots purchased by Koeppel on behalf of LifeKey from the same media outlets.

 Request No. 2 seeks documents evidencing prices obtained by Koeppel on behalf of LifeKey, Boland International, and Warner Healthcare for media slots and proposals made to television stations or networks for advertising placed by Koeppel. It is overbroad insofar as it seeks documents pertaining to prices obtained by Koeppel on behalf of Boland International and Warner Healthcare because the counterclaim does not deal with either of those companies.[1] Additionally, proposals made to stations are not relevant to the actual prices obtained on behalf of Lifekey. At the hearing, Koeppel proposed limiting production to prices obtained from the same stations which sold time slots for LifeKey to Cmedia, namely ESPN. While not finding prices obtained from all stations on LifeKey's behalf to be irrelevant, because obtaining such information could lead to the discovery of relevant evidence, the Court will not limit discovery quite so narrowly. The Court finds that by modifying Request No. 2 to require production of only those documents showing prices charged by television stations or networks for advertising placed by Koeppel for Lifekey, including station affidavits and documents showing the prices charged for spots and the number of spots cleared, Koeppel will not be subjected to an undue burden.

 On the other hand, Requests Nos. 1 and 3 are facially overbroad because they seek extremely broad categories of documents evidencing communications and agreements between Koeppel and LifeKey as well as companies who are not party to the underlying litigation. They also seek information related to Koeppel's business dealings and negotiations. The information sought in Requests Nos. 1 and 3 is irrelevant to the issue of whether the rates obtained by Cmedia on behalf of LifeKey were excessive, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, the requests seek documents which both parties agree contain confidential information. *See i.e. Batture Fleet, Inc. v. Browner,* 2000 WL 748093 (E.D.La., June 8, 2000) (finding a subpoena to a non-party requesting a broad category of documents containing trade secrets to be unreasonable). Accordingly, the Court finds that Requests Nos. 1 and 3 subject Koeppel to an undue burden, and Koeppel's motion is granted as to these requests.

## B. Trade secrets

Koeppel claims that the requests seek the production of documents that constitute or contain information which would reveal Koeppel's business or trade secrets. (Obj. at 5–8.) Cmedia asserts its proposed protective order would provide adequate assurance of confidentiality. (Resp. at 2.) The proposed protective order would allow disclosure of documents marked "Highly Confidential" only to attorneys and independent experts. *Id.*

 No absolute privilege for confidential information or trade secrets exists. *Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 131 F.R.D. 668, 671 (S.D.Tex.1990). Rule 45 provides that a court may place conditions upon the production of documents where the request requires disclosure of a trade secret or other confidential commercial information and the party seeking discovery shows a substantial need for the material that cannot otherwise be met without undue hardship. FED. R. CIV. P. 45(c)(3)(B). The moving party has the burden to establish that the

---

**1.** Counsel advised during the hearing that Boland International and Warner Healthcare have since become defendants in this case. However, neither company is a party to the counterclaim which is the subject of the requests.

information sought is a trade secret and that its disclosure might be harmful. *Exxon Chemical Patents, Inc.*, 131 F.R.D. at 671. Disclosure to a competitor is presumptively more harmful than disclosure to a noncompetitor. *Echostar Communications Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391, 395 (D.Co.1998). If the moving party meets its burden of proof, the burden then shifts to the party seeking discovery to show that the requested information is relevant and necessary. *Id.* The court then balances the need for the trade secrets against the claim of injury resulting from disclosure. *Id.* Even if the requested documents are relevant, discovery will not be permitted if the party seeking discovery fails to show need or if the potential harm caused by production outweighs the benefit. *Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 529 (D.Del.2002).

█ Koeppel claims that the requested documents "would reveal Koeppel's business patterns or constitute compilations of information used by Koeppel to gain an advantage over competitors (such as Cmedia)." (Obj. at 7.) Peter Koeppel's affidavit states that information concerning terms of contracts and advertising rates would provide a business advantage to competitors, that Koeppel has a practice of maintaining the confidentiality of that information, and that disclosure of that information to Cmedia, a competitor, would damages Koeppel's ability to compete. (Obj., Exhibit A at 1–2.) Accordingly, Koeppel has met its burden to show that the information is a trade secret and that its disclosure might be harmful.

As noted above, Cmedia has shown that the documents pertaining to the rates obtained by Koeppel on behalf of LifeKey are relevant to its defense of LifeKey's counterclaim. While the requested documents are relevant and assuredly in the possession of Koeppel, it appears that they might also be obtained from LifeKey, a party to the litigation. At the hearing, Cmedia represented that in its response to discovery requests, LifeKey stated that the only documents pertaining to the rates obtained by Koeppel in LifeKey's possession were summaries. However, Rule 34 permits discovery of documents "in the possession, custody, or *control*" of a party. FED. R. CIV. P. 34(a) (emphasis added). Koeppel admitted during the hearing that it would provide the requested documents to LifeKey upon request. Arguably, then, the documents pertaining to the rates obtained by Koeppel on behalf of LifeKey are in the control of LifeKey. Although Cmedia should be able to obtain this information through routine discovery requests to LifeKey, who would then request and obtain them from Koeppel seems inefficient and not cost-effective. As discussed during the hearing, it would also possibly force Koeppel to intervene in the underlying action in order to protect its confidential information.

Balancing Koepppel's need to protect its confidential business information with Cmedia's need for the requested documents to defend against LifeKey's counterclaim, the Court is of the opinion that in the interests of efficiency and economy, the documents pertaining to the rates obtained by Koeppel on behalf of LifeKey should be produced to Cmedia in such a manner as to assure confidentiality. These documents will be produced subject to a protective order which restricts of disclosure of privileged documents to the attorneys involved in the litigation and independent experts, and which ensures return of all documents, including copies, to Koeppel within a reasonable time after conclusion of the litigation or certification of destruction thereof.

### III. Conclusion

For the foregoing reasons, Koeppel's motion is **GRANTED** and the subpoena is modified to require only production of those documents showing prices charged by television stations or networks for advertising placed by Koeppel for Lifekey, including station affidavits and documents showing the prices charged for spots and the number of spots cleared. Within ten (10) days of the date of this order, the parties are ordered to submit to the Court an agreed protective order for signature and entry. The agreed order shall include the requirements set forth above and delineate the conditions under which the above-mentioned documents will be produced. Within ten (10) days of the date on

which the Court signs the agreed protective order, Koeppel shall produce the documents showing prices charged by television stations or networks for advertising placed by Koeppel for Lifekey, including station affidavits and documents showing the prices charged for spots and the number of spots cleared.