929 So.2d 75 (2006)
In re The Texas Matter of The MARRIAGE OF Vesta L. KUNTZ and Hal M. Kuntz and
In The Interest of Vesta M. Kuntz, Minor Child.
No. 2005-CA-0172.
Court of Appeal of Louisiana, Fourth Circuit.
February 1, 2006.
*76 Carl D. Rosenblum, Alida C. Hainkel, Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, for Appellant.
Robert A. Vosbein, Mark R. Beebe, Ronald J. Sholes, Robert N. Markle, Adams and Reese LLP, New Orleans, LA, for Appellee.
(Court composed of Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.
The issue in this case is whether certain documents, withheld by McMoran Oil and Gas L.L.C. are subject to discovery. The trial court ordered the production of the documents and this appeal followed. We find that the trial court did not abuse its discretion in ordering production of the documents. Therefore, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
Appellee, Vesta Kuntz ("Vesta") sought to compel discovery from nonparty-appellant, McMoran Oil and Gas L.L.C., McMoran Exploration Co., Freeport McMoRan Sulphur, Inc., and McMoRan Offshore Exploration Co. (collectively, "MOXY").
By way of background, Vesta was married to Hal Kuntz ("Hal") for almost sixteen years, from October 1983 to June 1999 when they divorced. They reached a court approved Agreement Incident to Divorce ("AID") in order to divide their property. The AID contains the following pertinent language:
Husband by virtue of employment or as a partner of CLK may earn additional interests in oil and gas leases and properties, which Husband may acquire by assignment from McMoran Offshore Exploration Co. ("MOXY") or its successors or predecessors in the future. All such interests which have not been assigned by MOXY shall be the property of Husband, except Wife will have the right to 25% of all overriding royalty interests, if any, from MOXY assigned to Husband after the date of the divorce that results from projects on which CLK forwarded letters of recommendation to MOXY to drill during the marriage.
MOXY is an independent oil and gas company engaged in the exploration, development and production of oil and gas. Under a prior contract MOXY retained CLK Company, L.L.C. ("CLK") as a geological and geophysical consultant.[1] CLK evaluated oil and gas prospects for MOXY. After the evaluation, CLK would send MOXY a Letter of Recommendation ("LOR") detailing its findings and recommending whether MOXY should drill in the area or not. The consulting agreement between MOXY and CLK provided that the data and information belonged exclusively to MOXY and Hal was obligated to maintain confidentiality of the data and the written consent of the CLK board was required to disclose the information to third parties.
In her post divorce proceedings, Vesta sought production of the LORs from Hal. *77 Vesta argued that Hal was depriving her of funds owed under the AID. The Texas Supreme Court held that Hall did not have physical possession and control of the LORs so Hal was not required to produce the documents. In re Hal G. Kuntz, 124 S.W.3d 179, 47 Tex. Supp. Ct. J. 168 (2003) Thus, Vesta filed suit against MOXY in Louisiana to obtain the documents. Vesta issued notices of depositions and subpoenas duces tecum to MOXY requesting the following:
1) Letters of recommendation produced by CLK Company, L.L.C. for any blocks on which assignment has been made to Hal G. Kuntz since June 30, 1999. This includes, but is not limited to, letters of recommendation for those properties listed on Exhibit A to this Notice. Any information referencing depth, reserve estimates or the names of specific formations may be redacted.
2) Letters of recommendation produced by CLK Company, L.L.C. for any blocks covered by the Texaco Exploration Agreement, dated effective January 1, 2000 between McMoRan Offshore Exploration Co. and Texaco. Any information referencing depth, reserve estimates or the names of specific formations may be redacted.
3) Letters of recommendation produced by CLK Company, L.L.C. for any blocks covered by the Asset Purchase Agreement between SOI Financing and Shell Offshore, Inc. and McMoran Oil and Gas, L.L.C. dated effective December 1, 1999. Any information referencing depth, reserve estimates or the names of specific formations may be redacted.
4) The Asset Purchase Agreement dated effective December 1, 1999, between SOI Financing and Shell Offshore, Inc. and McMoRan Oil and Gas, L.L.C., and internal and external communications relating to, referencing or evidencing the analysis, negotiations, and evolution of this agreement, including any letters of recommendation on any properties proposed to be included in the sale package, any drafts of the eventual agreement, correspondence concerning the initiation and negotiation of the agreement, including but not limited to electronic correspondence, both internal and external, memoranda, notes of conversations and all other forms of communication, written and oral, external to McMoRan or internal, but not including any information concerning reserve estimates or economic projections, all of which may be redacted from otherwise relevant documents.
5) The Texaco Exploration Agreement dated effective January 1, 2000, between McMoRan Offshore Exploration Co. and Texaco, and all internal and external communications relating to, referencing or evidencing the analysis, negotiations, and evolution of this agreement, including any letters of recommendation on any properties proposed to be included as subjects of the agreement, any drafts of the eventual agreement, correspondence concerning the initiation and negotiation of the agreement, including but not limited to electronic correspondence, both internal and external, memoranda, notes of conversations and all other forms of correspondence, written and oral, external to McMoRan or internal, but not including any information concerning reserve estimates or economic projections, all of which may be redacted from otherwise relevant documents.
MOXY complied with the request but produced redacted responses excluding LOR's sent after the Kuntz's divorce, the geological and geographical location and any expired LOR. As such, Vesta filed a motion to compel the documents and MOXY in turn moved for a protective order *78 and order to quash the subpoenas duces tecum contending that Vesta sought information that is a privileged trade secret under La.Code Evid. Art. 513. The trial court ordered MOXY to produce the documents as requested but pursuant to the Texas confidentiality agreement. An appeal followed.

STANDARD OF REVIEW
A trial court has broad discretion in handling discovery matters and an appellate court should not upset such a ruling absent an abuse of discretion. King v. Phelps Dunbar, XXXX-XXXX (La.App. 4 Cir. 4/2/03), 844 So.2d 1012.

SCOPE OF DISCOVERY
The Louisiana Supreme Court has delineated the "basic objectives" of the Louisiana discovery process as follows: (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims. Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125, 129 (La.1983). "The discovery statutes are to be liberally and broadly construed to achieve [their] intended objectives." Id.

PRODUCTION OF TRADE SECRETS
In its first and second assignments of error, MOXY argues that the trial court abused its discretion in ordering a nonparty to produce trade secrets and that Vesta failed to show that MOXY's trade secret records were both relevant and necessary to Vesta's claims and that good cause existed for their production.
In support of its argument, MOXY submitted the affidavit of Glen A. Kleinert ("Mr.Kleinert"), President and Chief Executive Officer of McMoRan Exploration Co. and President and Chief Operating Officer of McMoran Oil and Gas L.L.C. asserting that the records sought by Vesta are trade secrets and could seriously jeopardize MOXY's competitive position in the oil and gas industry. Mr. Kleinert testified that the success of an oil and gas exploration company depends on its ability to select, acquire and develop oil and gas interests before its competitors do. Mr. Kleinert insisted that even after MOXY has acquired an interest in an area evaluated in a LOR, the commercial sensitivity and need for strict confidentiality remain. Mr. Kleinert stated that the confidentiality remains because the information could lead to the discovery of hydrocarbon potential in adjacent acreage that MOXY did not control. Further, confidentiality is necessary because MOXY's interest in a lease covering an area may expire or terminate, but MOXY may reacquire an interest in the acreage in the future.
Vesta acknowledges that the LORs containing a recommendation that MOXY acquire an interest in property in which it does not yet have an interest may contain protected trade secret information. However, Vesta stated that it is not seeking those LORs but rather those related to properties in which MOXY has already acquired an oil and gas interest and therefore, is no longer confidential.
Louisiana law defines trade secret as:
Information, including a formula, pattern, compilation, program, device, method, technique, or process that: derives independent economic value, actual or potential, from not being separately known to and not being readily ascertainable by proper means by other persons who can obtain economic value *79 from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. La. R.S. 51:1431(4)(a)(b).

The federal courts have consistently held that there is no absolute privilege for trade secrets and Louisiana has adopted the concept of `relative secrecy' and not `absolute secrecy', which means courts do not require extreme and unduly expensive procedures to be taken to protect trade secrets. Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equipment Resource, Inc., 2004 WL 764174 (E.D.La.2004). In order to prove confidentiality, it must be established that the information sought is a trade secret and that its disclosure might be harmful. If the moving party meets its burden of proof then the burden shifts to the party seeking discovery to show that the requested information is both relevant and necessary to their claim. Id. In the present case, we find that MOXY met its burden of establishing that the LORs fall under Louisiana's definition of trade secrets. As such, the burden shifted to Vesta to show that the LORS were relevant and necessary to her claim.

RELEVANCY
La. C.C.P. art. 1422 provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." La. C.C.P. art. 1422 mimics the language of Federal Rule 26(b)(1) and requires that the matter must be relevant to "the subject matter involved in the pending action." Hodges v. Southern Farm Bureau Casualty Insurance Company, 33 So.2d at 128. Further, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probable than it would be without the evidence." La. C.E. art. 401. Courts have established that while relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Freeport-McMoran, 2004 WL 764174 at *5.
In support of its claim, MOXY maintains it has already produced to Vesta all information that is necessary and relevant to her claims and the trial court's ordering MOXY to produce all LOR's forwarded by CLK for which Hall received an assignment falls outside what the AID states will trigger, which is Vesta's right to overriding royalty interest. MOXY stressed that most of Vesta's requests are for documents that are dated months after the Kuntz divorce so Vesta will not have rights to any interests.
In contrast, Vesta insisted that the trial court acted within its discretion because the basic principles of discovery are to afford all parties a fair opportunity to obtain facts pertinent to the litigation. In response to the higher standard, Vesta maintained that Courts allow the request when it is the only method by which the party can prove their claim citing Francois v. Norfolk S. Corp., XXXX-XXXX, p. 1 (La. App. 4 Cir. 3/6/02), 812 So.2d 804, 805. In Francois, a railway company sought a motion to enforce a subpoena duces tecum it served upon an opposing parties' medical expert. This court stated:
Although the trial court has great discretion in discovery matters, that discretion may be abused when the trial judge denies a motion to compel the production of information that meets the requirements of La. C.C.P. art. 1422, especially where, as here, examination of the requested information may be the only means available to the party seeking *80 discovery to defend against claims made by the party from whom discovery is sought. Id.

In the present case, the information sought by Vesta is relevant and necessary because it provides the only method by which Vesta can investigate and determine what her possible royalty interests are and if she is actually being deprived money due to her under the AID.
Moreover, a complete review of the trial record reveals that it may be possible for Hal to acquire a future interest on one of the expired leases that MOXY did not produce. At the motion to compel hearing, MOXY's counsel could not adequately refute the claim. Therefore, it may be theoretically possible for Hal to have a future claim on an expired lease, which would give Vesta rights to additional royalty interests.
Further, according to the record provided to this Court, there were some transactions that were not produced in their entirety that were negotiated during the Kuntz marriage even though the official transaction took place six months after the divorce. Thus, it is possible for a LOR to be created during the marriage and not become final until after the date of the Kuntz divorce, which may give rise to additional royalty interest for Vesta.
It is clear from the record that Vesta demonstrated relevancy and necessity for the disputed discovery request. Thus, we cannot say that the trial court abused its discretion in ordering the production the requested discovery from MOXY in accordance with the Texas confidentiality agreement.

NON-PARTY DISCOVERY
MOXY argues in its third and final assignment of error, that Vesta failed to meet her burden of seeking discovery from a nonparty, which is relevancy and good cause. Stolzle v. Safety & Systems Assurance Consultants, Inc. XXXX-XXXX (La.5/24/02), 819 So.2d 287. We pretermit discussion of this assignment as we have already determined that Vesta proved relevancy and necessity for the LORs.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Hal was a minority owner of CLK.