998 So.2d 120 (2008)
In re the Texas Matter of the MARRIAGE OF Vesta L. KUNTZ and Hal M. Kuntz and in the Interest of Vesta M. Kuntz, Minor Child.
No. 2007-CA-0601.
Court of Appeal of Louisiana, Fourth Circuit.
October 15, 2008.
*121 Carl D. Rosenblum, Alida C. Hainkel, Jones Walker Waechter Poitevent Carrere *122 & Denegre, LLP, New Orleans, LA, for McMoran Oil & Gas LLC; McMoran Exploration Co.; Freeport McMoran Sulphur, Inc.; and Mcmoran Offshore Exploration Co.
Ronald J. Sholes, Robert A. Vosbein, Mark R. Beebe, Adams and Reese, LLP, New Orleans, LA, and Charles A. Sharman, Pro Hac Vice, Houston, TX, for Vesta L. (Kuntz) Frommer.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.
This appeal arises from a protracted divorce settlement. This Court originally found that the trial court did not abuse its discretion by ordering the production of documents, which contained trade secrets. However, the Louisiana Supreme Court reversed and remanded the matter to the trial court for an evidentiary hearing to determine if the requested trade secrets were relevant and necessary to the exwife's claim. The trial court found that the requested documents, although trade secrets, were relevant and necessary. For the reasons that follow, we find that the trial court did not abuse its discretion and affirm.

FACTUAL AND PROCEDURAL HISTORY
Vesta Kuntz ("Ms.Kuntz") sought to compel discovery from nonparties, McMoran Oil and Gas L.L.C., McMoran Exploration Co., Freeport McMoRan Sulphur, Inc., and McMoRan Offshore Exploration Co. ("MOXY"). Ms. Kuntz was married to Hal Kuntz ("Mr.Kuntz") from October 1983 to June 1999. Upon divorce, they reached a court-approved Agreement Incident to Divorce ("AID") in order to divide their property, which contains the following language:
Husband by virtue of employment or as a partner of CLK may earn additional interests in oil and gas leases and properties, which Husband may acquire by assignment from McMoran Offshore Exploration Co. ("MOXY") or its successors or predecessors in the future. All such interests which have not been assigned by MOXY shall be the property of Husband, except Wife will have the right to 25% of all overriding royalty interests, if any, from MOXY assigned to Husband after the date of the divorce that results from projects on which CLK forwarded letters of recommendation to MOXY to drill during the marriage.
Under a prior contract, MOXY, an independent oil and gas company, engaged in the exploration; development; and production of oil and gas, retained CLK Company, L.L.C. ("CLK") as a geological and geophysical consultant. Mr. Kuntz was a minority owner of CLK, which evaluated oil and gas prospects for MOXY. CLK sent MOXY Letters of Recommendation ("LORs") detailing its findings and recommending whether MOXY should drill in the area. The consulting agreement between MOXY and CLK provided that the data and information belonged exclusively to MOXY. Therefore, Mr. Kuntz was obligated to maintain the confidentiality of the data. Also, the written consent of the CLK board was required for Mr. Kuntz to disclose information to third parties.
Post-divorce, Ms. Kuntz sought production of LORs from Mr. Kuntz, arguing that Mr. Kuntz was depriving her of funds owed pursuant to the AID. The Texas Supreme Court held that Mr. Kuntz was not required to produce the documents as he did not have physical possession and control of the LORs. In re Hal G. Kuntz, 124 S.W.3d 179, 47 Tex. Supp. Ct. J. 168 *123 (2003). Ms. Kuntz then filed suit against MOXY in Louisiana to obtain the documents.
Ms. Kuntz issued notices of depositions and subpoenas duces tecum to MOXY requesting the following:
1) Letters of recommendation produced by CLK Company, L.L.C. for any blocks on which assignment has been made to Hal G. Kuntz since June 30, 1999. This includes, but is not limited to, letters of recommendation for those properties listed on Exhibit A to this Notice. Any information referencing depth, reserve estimates or the names of specific formations may be redacted.
2) Letters of recommendation produced by CLK Company, L.L.C. for any blocks covered by the Texaco Exploration Agreement, dated effective January 1, 2000 between McMoRan Offshore Exploration Co. and Texaco. Any information referencing depth, reserve estimates or the names of specific formations may be redacted.
3) Letters of recommendation produced by CLK Company, L.L.C. for any blocks covered by the Asset Purchase Agreement between SOI Financing and Shell Offshore, Inc. and McMoran Oil and Gas, L.L.C. dated effective December 1, 1999. Any information referencing depth, reserve estimates or the names of specific formations may be redacted.
4) The Asset Purchase Agreement dated effective December 1, 1999, between SOI Financing and Shell Offshore, Inc. and McMoRan Oil and Gas, L.L.C., and internal and external communications relating to, referencing or evidencing the analysis, negotiations, and evolution of this agreement, including any letters of recommendation on any properties proposed to be included in the sale package, any drafts of the eventual agreement, correspondence concerning the initiation and negotiation of the agreement, including but not limited to electronic correspondence, both internal and external, memoranda, notes of conversations and all other forms of communication, written and oral, external to McMoRan or internal, but not including any information concerning reserve estimates or economic projections, all of which may be redacted from otherwise relevant documents.
5) The Texaco Exploration Agreement dated effective January 1, 2000, between McMoRan Offshore Exploration Co. and Texaco, and all internal and external communications relating to, referencing or evidencing the analysis, negotiations, and evolution of this agreement, including any letters of recommendation on any properties proposed to be included as subjects of the agreement, any drafts of the eventual agreement, correspondence concerning the initiation and negotiation of the agreement, including but not limited to electronic correspondence, both internal and external, memoranda, notes of conversations and all other forms of correspondence, written and oral, external to McMoRan or internal, but not including any information concerning reserve estimates or economic projections, all of which may be redacted from otherwise relevant documents.
MOXY produced redacted responses excluding LORs sent after the Kuntz's divorce, the geological and geographical location and any expired LOR. Ms. Kuntz filed a motion to compel the documents and MOXY moved for a protective order and order to quash the subpoenas duces tecum. MOXY contended that Ms. Kuntz sought information that is a privileged trade secret under La. C.E. art. 513. The trial court ordered MOXY to produce the documents pursuant to the Texas confidentiality agreement.
*124 This Court found that the trial court did not abuse its discretion in ordering production of the documents. However, the Louisiana Supreme Court remanded the matter to the trial court to make specific findings that Ms. Kuntz met her burden of showing the requested trade secret information is both relevant and necessary to her claim.
On remand, the trial court conducted a hearing on the motion to reconsider and rendered specific findings. The trial court found that the documents sought by Ms. Kuntz were relevant and necessary. MOXY's appeal timely followed.

DISCOVERY STANDARD OF REVIEW
"Trial courts have broad discretion in ruling on discovery matters that are presented during the course of litigation, including the scope of discovery." Aymond v. Dupree, 05-1248, p. 5 (La.App. 3 Cir. 4/12/06), 928 So.2d 721, 726. "Such discretion will not be disturbed on appeal absent a clear showing of abuse." Id.
In Moak v. Ill. Cent. R.R. Co., 93-783 (La.1/14/94), 631 So.2d 401, 403, the Louisiana Supreme Court stated that the basic objectives of the discovery process are to allow parties to obtain pertinent facts; to discover true facts and compel their disclosure; to assist in trial preparation; to narrow and clarify the issues; and to encourage settlement or abandonment of claims lacking merit. These objectives can be met by requesting the production and inspection of documents and tangible things within the scope of discovery and in the possession of an opposing party. Id. Since courts are to construe discovery statutes liberally and broadly, including those provisions addressing the scope of discovery, any relevant unprivileged information, whether or not admissible at trial and whether documents or tangible things, is discoverable. 631 So.2d at 406.

RELEVANCE AND NECESSITY
The Louisiana Supreme Court ordered the trial court to make specific findings of relevance and necessity for each disputed discovery request. After the trial court's hearing, the trial court found the documents requested by Ms. Kuntz both relevant and necessary to the Texas proceedings.
Trade secrets belong to a category of information that is generally considered confidential and not discoverable; this Court determined that MOXY established that the information (the LORs) constituted trade secrets.[1]In re Marriage of Kuntz, 05-0172, p. 6 (La.App. 4 Cir. 02/01/06), 929 So.2d 75, 79. The burden then shifts to Ms. Kuntz to show that the LORs were relevant and necessary to her claim. According to La. C.E. art. 401, "`[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, the Louisiana Supreme Court stated:
Because the Louisiana statutes on discovery, La.Code Civ. Proc. art. 1420 et seq., are derived from the federal rules and contain many similar provisions, Louisiana courts construing the Louisiana discovery provisions have frequently relied on federal jurisprudence under analogous federal provisions as persuasive authority. Hodges v. S. Farm Bureau Cas. Co., 433 So.2d 125, 129 (La. 1983). Once a party establishes the information *125 sought is a trade secret and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary. Centurion Indus., Inc. v. Warren Steurer and Associates, 665 F.2d 323, 325 (10th Cir.1981), Cmedia, L.L.C. v. Lifekey Healthcare, L.L.C., 216 F.R.D. 387, 390-391 (N.D.Tex.2003).
In re Marriage of Kuntz, 06-0487 (La.5/26/06), 934 So.2d 34.
The trial court found that the documents encompassed three categories: 1) LORs that CLK issued to MOXY during the marriage that resulted in overrides assigned to Mr. Kuntz post-divorce, 2) LORs that CLK issued to MOXY during the marriage and other documents relating to MOXY's acquisition of Shell and Texaco leases, and 3) LORs that CLK issued to MOXY during the marriage relating to leases that have expired.

LORS That CLK Issued to MOXY During the Marriage that Resulted in Overrides Assigned to Mr. Kuntz Post-Divorce
Ms. Kuntz requested LORs produced by CLK for blocks on which an assignment was made to Mr. Kuntz after the divorce. The AID provides:
Wife will have the right to 25% of all overriding royalty interests, if any, from MOXY assigned to Husband after the date of the divorce that results from projects on which CLK forwarded letters of recommendation to MOXY to drill during the marriage.
Interpreting the AID, the trial court reasoned that the LORs CLK issued to MOXY during the marriage, which resulted in overrides assigned to Mr. Kuntz post-divorce, "are the crux of the Texas [p]roceeding and are therefore relevant in that they directly bear upon the issue to be proven." The trial court also stated that the LORs may contain information that would tend to prove the existence of monies owed to Ms. Kuntz pursuant to the AID.
Ms. Kuntz must establish, in the Texas proceeding, that MOXY assigned overrides to Mr. Kuntz resulting from projects on which CLK forwarded LORs to MOXY during the marriage. Without the LORs, Ms. Kuntz will be unable to establish that she has not been privy to overriding royalty interests to which she is entitled.
We find that the LORs issued to MOXY during the marriage may entitle Ms. Kuntz to a share of royalty interests assigned to Mr. Kuntz post-divorce. The requested documents are relevant as to non-compliance with the AID and are necessary, as without which, such non-compliance may not be proved. Thus, the information contained therein is necessary to the pursuit of her claim that she is being deprived of monies owed under the AID. Therefore, we find no abuse of discretion in the trial court's finding of relevance and necessity of the LORs that CLK issued to MOXY during the marriage that resulted in overrides assigned to Mr. Kuntz post-divorce.

LORS That CLK Issued to MOXY During the Marriage and Other Documents Relating to MOXY's Acquisition of Shell and Texaco Leases
Ms. Kuntz submitted into evidence a letter from Donn C. Fullenweider ("Mr.Fullenweider"), Mr. Kuntz's attorney, which states:
Attached you will find a photocopy of the Gulf of Mexico Newslettter for January 24, 2000, which Hal gave me to pass on to you and Vesta. Please note on pages 2 and 3, the article about McMoRan buying Shell leases. This is the acquisition of substantially more leases than acquired in the last ten years. It represents significant opportunity for *126 McMoRan and Hal in the future. Some of these blocks he may have worked on during the marriage. [Emphasis added].
The trial court made a specific finding of relevance and necessity of the information based on the letter from Mr. Fullenweider. The trial court found that, based on the information contained in the letter, "other documents relating to MOXY's acquisition of Shell and Texaco leases are relevant to the Texas proceeding in that they may contain information that would tend to prove that the existence of LORs relative to the Shell and Texaco leases, which were forwarded to MOXY during the marriage are more likely."
The Louisiana Supreme Court set forth the standard to be applied in the case sub judice, requiring "the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary." Kuntz, 06-0487, 934 So.2d 34, citing Centurion, 665 F.2d at 325, Cmedia, 216 F.R.D. at 390-391. MOXY submits that this trial court finding was based on a conclusory assertion that the trade secret documents sought are relevant to the litigation and, therefore, does not meet the legal standard required to overcome trade secret privilege.
The issue in the Texas litigation is whether Mr. Kuntz worked on the Shell and Texaco blocks during the marriage, which may entitle Ms. Kuntz to 25% of the overriding royalties from those projects. Ms. Kuntz averred that after she and Mr. Kuntz divorced, MOXY acquired oil and gas leases from Shell and Texaco. She also alleged that MOXY's decision to purchase these leases may have been based on LORs that CLK issued to MOXY during the marriage.
We find that Mr. Fullenweider's letter, in conjunction with Ms. Kuntz's allegations, establish the relevance of the documents and supply the basis for the need of other documents necessary to ascertain whether Ms. Kuntz received a percentage of all overrides to which she is entitled under the AID. As such, we find no abuse of discretion in the trial court's finding that the LORs that CLK issued to MOXY during the marriage and other documents relating to MOXY's acquisition of Shell and Texaco leases are relevant and necessary to Ms. Kuntz's claim.

LORS That CLK Issued to MOXY During the Marriage Relating to Leases That Have Expired or Terminated
Ms. Kuntz provided the trial court with a list of assignments that MOXY made to Mr. Kuntz post-divorce. These LORs were issued during the marriage and were related to leases that have expired or terminated. The trial court noted that some of these assignments have since expired or terminated, but MOXY had success upon their exploration. As a result of this success, Mr. Kuntz may have received overrides prior to the expiration or termination.
Ms. Kuntz argues that all of the requested documents are necessary, as they contain information that cannot be obtained through any other source. "Whether disclosure should be required depends upon a weighing of the competing interests involved against the background of the total situation, including consideration of such factors as the dangers of abuse, good faith, adequacy of protective measures, and the availability of other means of proof." (Emphasis added). Centurion, 665 F.2d at 326 [FN.6], citing Advisory Committee Note to Rule 5-08 of the proposed Federal Rules of Evidence, 46 F.R.D. at 271.
MOXY maintains that the trial court did not consider whether Ms. Kuntz could obtain the information from less intrusive *127 alternative sources. However, the trial judge asked counsel for MOXY, "[i]s there a document somewhere that would show how much money Mr. Kuntz is receiving on wells being drilled that reference Letters of Recommendation?" MOXY's counsel replied, "I don't believe there's such a document." Thus, the trial court found that the documents are necessary, given that no practicable alternative means of obtaining the information exists. We do not find that the trial court abused its discretion in making this determination.
MOXY also assigns error to the trial court's determination that no less intrusive alternative existed to document that payments to Mr. Kuntz were attributable to post-divorce assignments of royalty interests based on LORs forwarded by CLK to MOXY during the marriage. MOXY further contends that the trial court neglected consideration of other documents. Specifically, MOXY suggests that the trial court should have deemed the following items less-intrusive sources available to Ms. Kuntz: 1) information that MOXY provided to Ms.Kuntz; 2) a list provided to Ms. Kuntz by Mr. Kuntz in the Texas action that sets forth all post-divorce assignments by MOXY to Mr. Kuntz; 3) publicly available information related to properties for which Mr. Kuntz received a post-divorce assignment of royalty interests; and 4) certain MOXY LORs that Ms. Kuntz obtained through discovery in the Texas proceedings.[2]
Ms. Kuntz argues that Mr. Kuntz has had the advantage of seeing the LORs and making the unilateral determination as to which overrides he is required to share with Ms. Kuntz. Ms. Kuntz maintains that the documents provide proof that Mr. Kuntz is not honoring the AID.
We find that the LORs relating to leases that have expired or terminated are in fact relevant to the Texas proceeding because they may contain information that would tend to make the existence of an overriding royalty interest subject to the AID more or less probable. The information subpoenaed by Ms. Kuntz is necessary, as without the information, it remains unclear whether MOXY's decision to drill in specific areas was as a result of LORs issued to MOXY from CLK. This information cannot be obtained from other sources. Given that, the trial court's finding was not an abuse of discretion.
We find that Ms. Kuntz has satisfied the relevance and necessity standard for the documents sought in the Texas proceedings. The information sought is relevant to her claim in the Texas proceedings, and no alternative source exists from which the information that Ms. Kuntz seeks can be obtained. Given that, the standard for the production of the subject documents is satisfied, and MOXY must provide her with the documents subpoenaed. We find no abuse of the trial court's discretion in its specific findings.

DECREE
The record reflects that Ms. Kuntz demonstrated the relevance and necessity required by law to surmount the disputed discovery request. The trial court made specific findings of relevancy as ordered by the Louisiana Supreme Court as to each disputed discovery request. Further, given the necessity of the production of the requested discovery to Ms. Kuntz's Texas *128 claim, we find that the trial court did not abuse its discretion and affirm.
AFFIRMED.
NOTES
[1] The Louisiana Supreme Court did not reverse this Court's prior holding that the requested documents contained trade secrets.
[2] MOXY also contends that Ms. Kuntz seeks documents relating to projects after the marriage. However, the trial court limited Ms. Kuntz's entitlement to categories and documents that may reflect overrides resulting from work completed by Mr. Kuntz during the marriage.